IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Poni Anderson,

          Plaintiff,

v.

Commissioner of Social Security Administration,

          Defendant.

No. CV-23-00272-TUC-JGZ (BGM)

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff Poni Anderson seeks judicial review of a final decision by the Commissioner of Social Security. (Doc. 1.) This matter was referred to Magistrate Judge Bruce G. Macdonald for a report and recommendation and has been fully briefed. (Docs. 14, 17, 20, 23.) Based on the administrative record (AR) and the parties' briefings, the Magistrate Judge recommends that the District Judge, upon her independent review, deny Plaintiff's appeal and affirm the Commissioner's decision.

## BACKGROUND

Poni Anderson was born in 1981 and is defined as a "younger person" by the Social Security Administration. (AR 32); 20 C.F.R. § 416.963(c). She has a high school diploma and one year of college education. (AR 47.) Since February 19, 2019, Anderson has been "basically homeless[1]" and has complained of health complications due to fibromyalgia and degenerative disc disease, among other ailments. (AR 46, 48.) Since that time, she also

---

[1] Anderson also testified that she had been living in a garage. (AR 49.)

has had no relevant work history.  (AR 47.)  In addition to seeing a number of medical providers over the years, Anderson has received pain management treatment from the Pima Pain Center and Advanced Pain Management.  (AR 576-631 (Pima Pain Center); 689-734, 794-962, 1023-1106, 1329-1482 (Advanced Pain Management).)  She has also received treatment from several neurologists.  (AR 774-793, 1526-1551 (Western Neurosurgery); 1596-1599 (Banner Neurology).)  Finally, Anderson has received treatment for generalized systemic toxicity.  (AR 500-509, 1552-1561, 1585-1595.)

Procedural History

On October 3, 2019, Anderson filed an application for Social Security disability benefits alleging a disability onset date of October 1, 2004, for impairments including fibromyalgia and a "bad spine."  (AR 87.)  Her application was denied at the initial review stage, (AR 100), and upon reconsideration, (AR 101).  Shortly after her application was denied on reconsideration, Anderson filed a request for a hearing before an Administrative Law Judge (ALJ).  (AR 122.)

On February 24, 2021, a telephonic hearing was held before the ALJ.  (AR 70-86.)  The ALJ concluded that Anderson was not disabled and not entitled to disability benefits.  (AR 122-132.)  Anderson's request for decision review was granted and the matter was remanded to the ALJ for further findings and an additional evaluation.  (AR 139-140.)

On December 7, 2022, a second, in-person, hearing was held before the ALJ.  (AR 43-69.)  The ALJ once again issued an unfavorable disability determination, (AR 15-34), and Anderson's request for review was denied, (AR 1-4).  As such, the ALJ's second decision is final for the purpose of judicial review.  42 U.S.C. § 1383(c)(3).

ALJ's Final Decision

At step one, the ALJ determined that Anderson had not engaged in substantial gainful activity since her amended disability onset date of February 25, 2019.  (AR 17.)

At step two, the ALJ determined that Anderson suffered from the severe impairments of degenerative disc disease and fibromyalgia.  (*Id*.)

At step three, the ALJ determined that Anderson did not have a combination of

impairments that met the listing requirements for a disability determination. (AR 25.)

After step three but before step four, the ALJ determined that Anderson had the Residual Functional Capacity (RFC) to perform sedentary work. (AR 25-26.)

At step four, the ALJ found that Anderson had no past relevant work. (AR 32.)

At step five, the ALJ concluded that based on her age, education, work experience, and RFC, there were jobs in the national economy that Anderson could perform. (AR 33.)

Hearing Testimony

The ALJ's final decision is based, in part, on Anderson's December 7, 2022 hearing testimony. (*See* AR 43-69.) At the hearing, Anderson testified that she is "basically homeless." (AR 48.) She showers either at her sister's or her friend's house. *Id.* She sleeps either at her sister's house or in "a spot that's kind of like a guest house of [an] unfinished building." *Id.* Anderson refers to this guesthouse as a garage. (AR 49.)

Anderson testified that she is not being treated by a pain doctor because she disagreed with her last provider's treatment decision and decided to give herself a year off because everything became too much. (AR 50.) She also stated that she is not seeing a pain doctor because she lacks transportation. (*Id.*) Before taking a year off, Anderson estimated that she was seeing various providers twice a week throughout the year. (AR 53.) She explained that she was receiving treatment at the Pima Pain Center, but that the treatment caused her more pain, no one was listening to her about the pain that it caused, and she could not walk for four months because of the treatment. (AR 54-55)

Anderson admitted that one provider refused to keep her as a patient because she misused morphine given to her by her mother. (AR 55.) She testified that she currently takes amitriptyline, hydroxyzine, and venlafaxine, and consumes "a handful" of aspirin and Aleve a "couple times a day" for pain. (AR 54.) Anderson also testified that she has cyclical vomiting syndrome, which she developed after receiving hysterectomy-related scarring treatment in the form of a mesh implant. (AR 52, 1612, 1622.)

Anderson testified that she is able to stand for not quite 30 minutes (about enough to do a load of dishes), sit for approximately an hour, and lift about ten pounds, or about a

gallon of milk.  (AR 56.)  She has pain throughout her body that averages in intensity of six out of ten.  (AR 57.)  She suffers from headaches and at least four migraines a month.  (AR 58.)  Anderson asserted that if she sits for too long, the pressure on her tailbone is too much and she has to lie down.  (AR 61.)  She estimates needing to lie down for four to five hours a day.  (AR 61-62.)

Stacia Schonbrun, a vocational expert (VE), testified that a hypothetical person with an RFC mirroring the ALJ's determination of Anderson could perform several sedentary jobs in the national economy.  (AR 64-65.)  Schonbrun also testified that a person limited to sitting for an hour before needing to stand and/or walk for twenty minutes while staying on-task would be unable to maintain employment because the types of sedentary jobs available require sitting for longer periods of time.  (AR 66-67.)

Dr. Barlow's Medical Opinion

On October 22, 2022, Anderson was seen by neurologist Dr. Robert Barlow, who offered a consultative examining opinion.  (AR 1620-1636.)  Dr. Barlow reviewed forty-four pages of medical records consisting of primary care provider notes, lab reports, imaging reports, and neurosurgery consultation notes.  (AR 1628.)  After reviewing the records and conducting an examination, Dr. Barlow wrote:

> At L4-L5, there is disc desiccation with a posterior annular tear. There is a 4-mm broad midline disc protrusion resulting to abutment of the descending L5 nerve roots bilaterally with a mild degree of central canal narrowing. There is mild facet arthropathy. At L5-S1, there is disc desiccation with a posterior annular tear. There is a 3-mm midline disc protrusion resulting in effacement of the anterior thecal sac with no neural abutment. There is mild central canal narrowing and mild facet arthropathy.
>
> . . . At C6-C7, there is a 3-mm broad midline disc protrusion resulting in flattening of the thecal sac with a mild degree of central canal narrowing. There is also a 2-mm left foraminal disc protrusion with mild narrowing of the left neural foramen and mild abutment of the exiting left cervical nerve root. On the edge of the images, there is a possibility of some tonsillar ectopia at the foramen magnum. Further evaluation with dedicated MRI imaging of the brain is recommended.
>
> . . . .

> I was asked to comment on this patient's tender/trigger points for the diagnosis of fibromyalgia. During the physical examination, the patient was sensitive in 16 out of the 18 points, thus confirming the diagnosis.
>
> On clinical examination today, the patient has fibromyalgia, mild-to-severe generalized pain with a positive straight leg test with radicular signs, peripheral neuropathy in the feet, migraines, and impaired balance. Patient otherwise has no over evidence of acute or chronic physical illness and patient's mental status was otherwise stable today. Other than the above, the patient's musculoskeletal examination reveals intact ranges of motion and strengths.

(AR 1628.)

Dr. Barlow also completed a Medical Source Statement of Ability to do Work-Related Activities ("Statement"), which indicated that: (i) Anderson could lift and carry up to 10 pounds continuously and up to 20 pounds occasionally in a work week; (ii) she could sit uninterrupted for 1 hour at a time and stand and/or walk uninterrupted for 20 minutes at a time; (iii) she could sit for a total of 4 hours in an 8-hour day and stand and walk for 1 hour each in the same day; and (iv) she should be lying down for the remaining two hours of the workday. (AR 1631-1632.)

## CLAIM EVALUATION

The Commissioner employs a five-step sequential process to evaluate disability claims. *See* 20 C.F.R. § 404.1520; *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). The burden of proof is on the claimant at steps one through four. *Saul*, 950 F.3d at 1148. To demonstrate a disability, the claimant must show that she: (i) is not working; (ii) has a severe physical or mental impairment; (iii) the impairment meets or equals the requirements of a listed impairment; and (iv) has an RFC that precludes her from performing her past work. *See id*. § 404.1520(a)(4); *Ford*, 950 F.3d at 1148-49. At step five, the burden shifts to the Commissioner to show that "the claimant can perform a significant number of other jobs in the national economy." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). This five-step determination is based upon the claimant's RFC, age, work experience, and education. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir.

2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, the Commissioner does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

## LEGAL STANDARD

A federal court's review of Social Security determinations is limited. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision to deny benefits is disturbed only if it is based on legal error or is not supported by substantial evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 (2019) (cleaned up). To determine whether an ALJ's decision is supported by substantial evidence, district courts review the administrative record as a whole and weigh the evidence that both supports and detracts from the ALJ's conclusion. *Shalala*, 53 F.3d at 1039. The ALJ is responsible for determining credibility and for resolving conflicts in medical testimony and ambiguities in the record. *Id*. Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## DISCUSSION

Anderson raises two issues for review on appeal of the Commissioner's disability determination. (*See* Doc. 17 at 2.) First, she asserts that the ALJ erred by failing to provide clear and convincing reasons to discount her symptom testimony. (*Id*. at 7-9.) Second, she asserts that the ALJ erred by failing to sufficiently address a critical aspect of Dr. Barlow's medical opinion. (*Id*. at 9-11.) The Commissioner asserts that the ALJ reasonably discounted Anderson's symptom testimony because her subjective testimony was inconsistent with the medical and other evidence in the record. (Doc. 20 at 5.) The Commissioner also asserts that the ALJ reasonably evaluated Dr. Barlow's opinion based on its lack of supportability and inconsistency with the record. (*Id*. at 11.) The Court agrees with the Commissioner and recommends that his determination be affirmed and Anderson's appeal denied.

## I.        Symptom Testimony Properly Discounted

An ALJ may not reject a claimant's subjective pain complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and inconsistencies in the claimant's testimony.  *Id*.  The ALJ may also consider the nature, location, onset, duration, frequency, radiation, and intensity of pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side-effects of pain medication; treatment, other than medication, for relief of pain; functional restrictions; and the claimant's daily activities. *Id.* The ALJ's reasons for rejecting pain testimony must be clear and convincing. *Id.*  She must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints.  *Id*.

Anderson argues that the ALJ failed to provide clear and convincing reasons to disregard her symptom testimony because the ALJ discounted her testimony regarding having to lay down for approximately four hours a day with evidence of her opiate-seeking behavior.  (Doc. 17 at 7-8.)  Anderson insinuates that this is the *only* evidence the ALJ used to discount her symptom testimony.  (*Id*.)  Anderson also argues that the ALJ failed to credit her daily activities such as gardening with her testimony that she needs to move around at least once per hour throughout the day.  (*Id*. at 8.)  These arguments are unavailing because the ALJ offered pages of creditworthy reasons to discount Anderson's subjective pain testimony, (*see* AR 26-30), and the Court cannot second-guess an ALJ's credibility finding when it is supported by substantial evidence, *Thomas*, 278 F.3d at 959. Moreover, a claimant cannot defeat an ALJ's credibility finding by dissecting discrete lines from her opinion and extrapolating that they amount to legal error.  *See Smartt v. Kijakazi,* 53 F.4th 489, 499 (9th Cir. 2022) (reiterating that the clear and convincing standard only requires an ALJ to "show his work" and identify "specific, clear, and convincing" reasons to support a finding that a claimant's limitations were not as severe as she claimed).

In evaluating Anderson's credibility, the ALJ provided more than sufficient specific, clear, and convincing reasons to find her subjective pain testimony unpersuasive. (*See* AR 26-30.)   The ALJ found that: (i) Anderson had given conflicting testimony regarding her previous use of morphine (AR 26); (ii) Anderson was not being treated by a pain management provider despite her allegations of extreme pain (AR 27); (iii) Anderson was only taking over-the-counter medications, essential oils, and vitamins for her pain (AR 27, 30); (iv) an examining provider reported normal muscle strength and tone, no tenderness, no spasms, and no bony abnormalities in her spine with a full range of motion (AR 28); (v) notations in Anderson's medical records demonstrated a number of positive drug screens and/or inconsistencies with the pain medications she was prescribed (AR 29); (vi) Anderson reported 30-50% pain control with medication when being treated by a pain management provider (AR 29); (vii) Anderson had been advised to engage in core exercises, aerobic exercises, use a TENS unit, stretch, and use heat/ice for her pain (AR29); (viii) Anderson had a history of missed medical appointments (AR 29); (ix) Anderson was advised by a neurologist that her headaches were likely from medication overuse, and she was instructed to stop taking large doses of over-the-counter medications (AR 30); (x) Anderson had a number of unremarkable physical examinations (AR 30); and (xi) consideration was given to Anderson's symptom testimony such that she was limited to sedentary work activity (AR 30).   These findings are sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit Anderson's symptom testimony. *See Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony").

Additionally, Anderson fails to provide convincing support for her assertion that an ALJ must consider a claimant's daily activities to bolster the claimant's subjective symptom testimony. (Doc. 17 at 8-9.)  In fact, controlling case law indicates the reverse— that an ALJ may use a claimant's daily activities as evidence to *discredit* her testimony upon making specific findings relating to those activities. *See, e.g., Fair v. Bowen*, 885

F.2d 597, 603 (9th Cir. 1989) ("[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."); *Smartt*, 53 F.4th 489, 499 (reiterating that a claimant's daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *Morgan v. Apfel,* 169 F.3d 595, 600 (9th Cir.1999) (concluding that claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work). As such, Anderson's first ground on appeal should be denied.

**II.      Dr. Barlow's Opinion Properly Discounted**

An ALJ cannot reject an examining doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023). "The [ALJ] must articulate how persuasive [she] finds all of the medical opinions from each doctor or other source and explain how [she] considered the supportability and consistency factors in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (cleaned up). "Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with the evidence from other medical and nonmedical sources." *Kitchen*, 82 F.4th at 740 (cleaned up). "There is no longer a hierarchy of medical opinions that determines how the opinions are weighed." *Id*. Since an ALJ is not required to take medical opinions at face value, she may consider the quality of the explanation when determining how much weight to give an opinion. *Ford*, 950 F.3d at 1155. She may also "reject check-off reports that do not contain any explanation of the bases of their conclusions," *id.*, and is the final arbiter with respect to resolving ambiguities in the medical evidence, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Anderson argues that the ALJ committed harmful error by failing to address Dr. Barlow's limitation that she could only sit for 1 hour at a time and stand or walk for 20 minutes at a time. (Doc. 17 at 10.) Anderson adds that the ALJ should have attributed the

doctor's other supporting evidence to the blank portion of his Statement where he was to provide justification for his check-off sitting/standing/walking limitation. (*Id*. at 10-11; AR 1632.) The Court disagrees. First, an ALJ is permitted to reject a doctor's check-off report that lacks an explanation, which is exactly the scenario that Anderson complains of here. *See* Ford, 950 F.3d at 1155; (AR 1632.) Second, even in the absence of the ALJ's permissible rejection, the Court concludes that she properly discounted Dr. Barlow's opinion by providing specific reasons supported by substantial evidence. (*See* AR 31-32.) The ALJ thoroughly explained the persuasiveness of Dr. Barlow's opinion and how she considered the supportability and consistency factors in reaching her finding. (*Id*.)

In her final decision, the ALJ concluded that Dr. Barlow's opinion was unpersuasive because it was "inconsistent with [the doctor's] examination findings and personal observations," as well as "unsupported by … the record and the findings of most other treatment providers." (AR 31.) She observed that while Dr. Barlow found that Anderson could perform light exertional activity, he determined that she could only sit for 4 hours and stand and walk for 1 hour each, which was less than a full workday. (*Id*.) She also noted that while Dr. Barlow limited Anderson's ability to reach and use her hands, his physical exam indicated full range of motion in her upper extremities and the ability to pinch, grasp, and manipulate objects. (AR 32.) Finally, the ALJ remarked that Dr. Barlow stated that Anderson could never balance, stoop, kneel, crouch, or crawl, but his exam showed that she had a normal and reciprocal gait, she could squat and rise without difficulty, and that she could get on and off the examining table without trouble. (*Id*.)

As it concerned the supportability of Dr. Barlow's check-off determination that Anderson could only sit for 4 hours and stand and walk for 1 hour each in a full workday, the ALJ observed that the doctor "left entirely blank" the portion of the Statement where he was to identify the medical or clinical findings or other evidence that supported his finding. (AR 31; 1632.) The ALJ indicated that this was particularly notable because in all other sections of Dr. Barlow's Statement, he provided a detailed narrative of findings. (*Id*.; AR 1631-1636.) The ALJ also found that while Anderson testified that she had to lay

down several times throughout the day to relieve pain, she made no such reports to any treatment providers and the limited notation that the ALJ did find only pertained to a 2016 record, which indicated that Anderson laid down to relieve pain after a lumbar epidural injection. (*Id.*; AR 903.) The ALJ noted that Anderson was encouraged by her pain management provider to be more rather than less active and that she reported to mental health providers that she was independent in her daily living activities, enjoyed gardening and being outdoors, and was helping her boyfriend with property management duties approximately 10 hours per day during consideration of her disability benefits application. (AR 31-32.) As such, Dr. Barlow's opinion was properly discounted, and Anderson's second ground on appeal should be denied.

<strong>RECOMMENDATION</strong>

The Magistrate Judge recommends that the District Judge, after her independent review, deny Plaintiff's complaint (Doc. 1) and affirm the Commissioner's final decision. Under the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days of being served with a copy of this Report and Recommendation, and a party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted by the District Judge. If objections are filed, the parties shall use the following case number: **23-cv-272-JGZ**. Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 19th day of July, 2024.

_____
Honorable Bruce G. Macdonald
United States Magistrate Judge