1
2
3
4
5
6       **IN THE UNITED STATES DISTRICT COURT**
7       **FOR THE DISTRICT OF ARIZONA**
8
9  Poni Anderson,                          No. CV-23-00272-TUC-AMM (BGM)
10             Plaintiff,                   **ORDER**
11  v.
12  Commissioner of Social Security
   Administration,
13
                 Defendant.
14

15        On July 19, 2024, Magistrate Judge Bruce G. Macdonald issued a Report and
16  Recommendation (R&R) recommending that this Court affirm the Administrative Law
17  Judge's (ALJ's) denial of Social Security benefits. (Doc. 24.) Plaintiff filed objections to
18  the R&R, and the Commissioner responded. (Docs. 25, 27.) For the following reasons,
19  the Court will overrule Plaintiff's objections and affirm the R&R.

20        A district judge must "make a de novo determination of those portions" of a
21  magistrate judge's "report or specified proposed findings or recommendations to which
22  objection is made."  28 U.S.C. § 636(b)(1). A district judge may "accept, reject, or
23  modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28
24  U.S.C. § 636(b)(1).

25        The R&R finds that the ALJ properly discounted Plaintiff's symptom testimony
26  and Dr. Robert Barlow's medical opinion. (Doc. 24.) Plaintiff raises two objections to the
27  R&R. (Doc. 25.) First, Plaintiff argues that the Magistrate Judge erred by affirming the
28  ALJ's discounting of Plaintiff's symptom testimony, specifically regarding Plaintiff's

1    need to alternate sitting and standing due to tailbone pain. (*Id*. at 1-4.) Second, Plaintiff
2    argues that the Magistrate Judge erred by affirming the ALJ's evaluation of Dr. Robert
3    Barlow's medical opinion. (*Id*. at 5.) The Court addresses each objection in turn.

4    **I.    The ALJ did not err in the analysis of Plaintiff's symptom testimony.**

5        **A. Plaintiff's Testimony**

6        The ALJ found that Plaintiff suffers from the severe impairments of degenerative
7    disc disease and fibromyalgia. (AR 17.) Plaintiff testified regarding her symptoms at a
8    hearing on December 7, 2022 before ALJ Laura Havens. (AR 43-69.)[1] At the hearing,
9    Plaintiff testified that her daily activities vary and that she sleeps all day in certain
10   weather because the weather affects her pain level. (AR 48-49.) She testified that she
11   cooks and does her own laundry. (AR 48-49.) Plaintiff testified that she is never pain-free
12   but that she was not seeing a medical provider for pain management. (AR 50-51.)
13   Plaintiff testified that she had an argument with her previous pain management doctor,
14   which led her to voluntarily take a year-long break from pain treatment because
15   "everything became too much." (AR 50-51, 53.) Plaintiff testified that she had not seen a
16   pain management doctor since October 2021. (AR 50-51.) Plaintiff further testified that
17   she did not have transportation to get to a doctor but that most of her medical
18   appointments were by phone. (*Id*.)

19       Plaintiff testified that she had seen doctors for her physical ailments "a few times"
20   in the past year, specifically, that she had seen a neurologist for migraines and had blood
21   work done. (AR 53.) She testified that she struggles with gastrointestinal problems,
22   including cyclical vomiting syndrome, and that she has erratic sleep habits. (AR 52.)
23   Plaintiff testified that she has constant pain at a level six out of ten. (AR 57.) She testified
24   that she has pain at the base of her skull that moves into her shoulder blade and "constant
25   pressure" in her tailbone that goes down her left sciatic nerve. (AR 54, 59.) She testified

26
27   [1] Plaintiff had a prior hearing with ALJ Havens on February 24, 2021. (Doc. 17 at 2, AR
     70-85.) That claim was remanded by the Appeals Council for further proceedings. (*Id*. at
28   2-3; doc. 24 at 2; AR 139-140.) The ALJ's second decision is the final decision for the
     purpose of these proceedings. (*Id*.) Accordingly, the parties' briefing and this Order focus
     on Plaintiff's testimony at her second hearing. (AR 43-69.)

that she was taking over-the-counter medications for pain relief three times per day. (*Id.*) Plaintiff testified that she has at least four migraines per month, and she treats them with rest and ice, as well as magnesium and essential oils. (AR 54, 58.) Plaintiff testified that she can stand for less than 30 minutes, sit for "maybe an hour," and lift 10 pounds. (AR 56.) Plaintiff testified that she exercises for about 15 minutes at a time and can drive for 30 minutes. (AR 51.)

Plaintiff testified that she feels pressure in her tailbone when sitting for long periods. (AR 61.) When the pressure is too much, she uses a heating pad and lays down. (*Id.*) She testified that she lays down for four to five hours per day, split up throughout the day, often for 30 minutes at a time although she sometimes falls asleep. (*Id.*) She then testified that she takes approximately three "laying down" breaks throughout the day. (AR 62.)

### B.  Legal Standard

"On judicial review, an ALJ's factual findings [are] conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citation omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023). The threshold for substantial evidence is "not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S.

389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony).

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *see also* 20 C.F.R. § 404.1529. First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). Next, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)); s*ee also Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (reasoning behind an ALJ's decision must be set forth "in a way that allows for meaningful review").

The standard of review is not whether the court is convinced by the claimant's testimony but rather "whether the ALJ's rationale is clear enough that it has the power to convince." *Id.* An ALJ does not provide clear and convincing reasons by "simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ali v. Comm'r of Soc. Sec. Admin.*, No. 4:21-CV-00278-JGZ-DTF, 2022 WL 3345860, at *3 (D. Ariz. July 27, 2022), *R&R adopted*, No. CV-21-00278-JGZ, 2022 WL 3345809 (D. Ariz. Aug. 12, 2022) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)). Thus, the ALJ must identify specific facts in the record and "must also link the testimony to the record supporting the non-credibility determination." *Id.*

**C. ALJ Findings**

Upon considering Plaintiff's testimony and the record, the ALJ limited Plaintiff to sedentary work as defined in 20 C.F.R. § 416.967(a), except that Plaintiff was limited to lifting or carrying 10 pounds occasionally or frequently and sitting for six hours and standing or walking for two hours of an eight-hour workday. (AR 26.) The ALJ further limited Plaintiff to never climbing ladders, only occasionally climbing stairs, stooping, kneeling, crouching, or crawling, and never being exposed to moving machinery or unprotected heights. (*Id.*) In reaching this residual functional capacity (RFC) determination, the ALJ found that the preponderance of the evidence, including Plaintiff's testimony and the record as a whole, did not support a finding that Plaintiff was unable to complete a normal day of sedentary work activity. (AR 30.) In making this finding, the ALJ considered Plaintiff's testimony that she experienced migraines and tailbone pain that required her to lay down for four hours per day. (*Id.*) The ALJ juxtaposed that testimony with Plaintiff's further testimony that she was taking only over-the-counter medications, essential oils, and vitamins to treat pain. (*Id.*) The ALJ also juxtaposed Plaintiff's testimony that she could not stand or walk for very long with

1    evidence documenting Plaintiff's normal strength, musculature, and gait. (*Id.*) The ALJ

2    noted evidence that suggested opioid-seeking behavior, including drug screens that were

3    positive for unprescribed morphine.[2] (*Id.*) The ALJ limited Plaintiff to sedentary work

4    based on her self-reported symptoms and despite inconsistencies in the record, but

5    specifically found that the evidence did not support Plaintiff's testimony that she had to

6    lay down for four hours per day. (*Id.*)

7      **D. Analysis**

8       Here, Plaintiff objects that the ALJ erred by failing to provide clear and

9    convincing reasons for discounting Plaintiff's testimony that she had to alternate sitting

10   and standing due to tailbone pain. (Doc. 25 at 3-4.)[3] Plaintiff argues that the ALJ erred by

11   using the same reasons to discount Plaintiff's need to alternate sitting and standing to

12   discount her testimony that she had to lay down for four hours per day due to pain. (*See

13   id*; *see also* doc. 23 at 3.) She further argues that the ALJ's failure to address her specific

14   need to alternate sitting and standing was erroneous. (*Id.*) Plaintiff also objects that the

15   ALJ erred by finding Plaintiff's activities of daily living inconsistent with her stated need

16   to alternate sitting and standing. (*Id.* at 4.)

17      Having reviewed the relevant portions of the record, the parties' arguments, the

18   ALJ's decision, and the R&R, the Court is not persuaded by Plaintiff's objection. The

19   objection misconstrues Plaintiff's testimony, as Plaintiff never testified that she needed to

20   alternate between sitting and standing. Instead, the ALJ asked Plaintiff about her ability

21   to sit, in the following context:

---

[2] Plaintiff testified, and the record supports, that she took her mother's morphine. (AR 29-30, 59.)

[3] To the extent that Plaintiff objects that the Magistrate Judge applied the incorrect standard of review to the ALJ's decision, that argument lacks merit. Although Plaintiff contends that the Magistrate Judge's use of the term "credibility" in discussing the ALJ's analysis of the testimony and evidence is derived from an outdated legal standard, the Magistrate Judge correctly applied the "substantial evidence" and "clear-and-convincing reasons" standards in reviewing the ALJ's analysis of the symptom testimony. (*See* doc. 24 at 7-9); *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n. 5 (9th Cir. 2017) (SSR that eliminated use of term "credibility" was consistent with existing Ninth Circuit precedent requiring an ALJ to evaluate symptoms rather than examine a claimant's character or truthfulness). The Magistrate Judge's use of the term "credibility" did not conflict with or undermine the R&R's application of the standard of review.

Q: [H]ow long can you walk or stand at a time?
A: I know standing not too long, maybe enough to do a load of dishes, but that's about it.
Q: So maybe half an hour, thirty minutes?
A: Actually, no, not that long because I start getting pain shoot up my leg and my back, so I have to elevate it.
Q: How long can you sit?
A: I can sit for maybe an hour.
Q: And how much can you lift?
A: About 10 pounds, about a gallon of milk.

(AR 56.) Plaintiff then testified to her tailbone pain, stating, "[W]hat really gets it [sic] is I feel my tailbone constantly. I constantly feel my tailbone, which is like constant, constant pressure. And from that it goes shooting down my left leg at that sciatic nerve." (AR 57.)

In response to her attorney's questioning, Plaintiff testified as follows:

Q: What happens if you sit too long?
A: The pressure on my tailbone begins to be too much. Sometimes it just – it's like a compacting feeling. Like it almost feels like it wants to break in half because of the pressure. So I just have to let it rest. Depending on which side is good, my left or my right, I just, I guess, let the inflammation go down.
Q: When it gets to that point, what do you have to do to relieve it?
A: It's usually heating pad and laying down. That's about it.

(AR 61.) In analyzing this testimony, the ALJ discounted Plaintiff's statement that she had to lay down for four hours per day due to pain. (AR 30.) The ALJ identified several reasons for discounting Plaintiff's pain testimony, including but not limited to: (1) Plaintiff's conflicting and "confusing" testimony regarding her morphine use (AR 26-27); (2) Plaintiff's voluntary discontinuation of pain treatment in October 2021 (AR 26); (3) the lack of treatment by a pain provider despite Plaintiff's allegations of severe pain (AR 26-27); (4) Plaintiff's use of only over-the-counter medications for pain (AR 27, 30); (5) evidence that medication treatment was effective but nevertheless discontinued (AR 29); (6) advice from Plaintiff's pain treatment provider that she should engage in core and aerobic exercises, stretch, and use heat/ice to manage pain (AR 29); and (7) Plaintiff's normal physical examination results (AR 28-29). These constitute clear and convincing reasons for discounting Plaintiff's testimony that she needed to lay down for four hours

per day to alleviate pain. The evidence that Plaintiff voluntarily ceased pain treatment and was advised to engage in physical activity to alleviate pain are particularly convincing.

The Plaintiff's symptom testimony and, consequently, the ALJ's analysis of it, focused on her alleged need to lay down frequently and for a significant period each day due to pain. Plaintiff's objection misconstrues her own testimony as a need to alternate between sitting and standing, rather than a need to lay down due to pain. Upon review of the briefing and the record, Plaintiff's objection appears to misconstrue her testimony to align it with the vocational expert's (VE's) testimony regarding a hypothetical sit/stand limitation. (*See* doc. 25 at 5.) Specifically, following Plaintiff's testimony, the VE testified in response to a hypothetical presented by the ALJ that an individual who had to alternate between sitting for one hour and standing for twenty minutes would not have any jobs available. (AR 66-67.) In the RFC, the ALJ did not address a limitation related to a need to alternate sitting and standing. (AR 25-26.) Instead, in determining Plaintiff's RFC, the ALJ correctly considered the persuasiveness of Plaintiff's pain testimony, not the VE's testimony regarding a hypothetical limitation. *See* 20 C.F.R. § 404.1545(a)(3) (ALJ assesses RFC based on all relevant medical and other evidence); § 404.1529(a), (c)(3) (ALJ considers a claimant's pain testimony in evaluating intensity and persistence of symptoms). Plaintiff never testified that she needed to alternate between sitting and standing to alleviate pain. Rather, she testified that she had to lay down frequently and for a significant period each day to alleviate pain, which the ALJ discounted. As discussed below, the ALJ also properly discounted Plaintiff's testimony regarding sitting limitations due to pain, which would include a hypothetical limitation of needing to alternate sitting and standing. Importantly, the need to alternate sitting and standing was presented only as a hypothetical to the VE. The ALJ did not err by analyzing and discounting the testimony that was actually before her, rather than Plaintiff's post-hoc recharacterization of it.

Moreover, the Court can reasonably infer that Plaintiff's testimony was that her tailbone pain caused her to allegedly be unable to sit for more than one hour. (AR 56-57,

61); s*ee Wilson v. Colvin*, 72 F. Supp. 3d 1159, 1162 (D. Or. 2014) (citing *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012)) ("[T]he court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.") The ALJ's testimony analysis incorporated Plaintiff's allegation of tailbone pain. (AR 30). Specifically, the ALJ stated that "[Plaintiff] testified to quite significant symptoms (daily headaches, chronic tailbone pain) that required her to lay down for about four hours per day[.]" (*Id.*) In discounting this testimony, the ALJ provided specific reasons and cited specific medical evidence, as set forth above. The law does not require more. *See Ali*, 2022 WL 3345860 at *3, *R&R adopted*, 2022 WL 3345809; *see also Brown-Hunter*, 806 F.3d at 489 (recitation of the medical evidence does not provide clear and convincing reasons). The ALJ addressed Plaintiff's pain testimony, cited substantial evidence that did not corroborate it, and explained why she found that Plaintiff was not limited to less than a full day of sedentary work activity. Because this analysis encompassed Plaintiff's tailbone pain testimony, it also reasonably encompassed any claimed limitation on sitting. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."); *see also Brown-Hunter*, 806 F.3d at 492 (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)) (ALJ's decision will be upheld if "the agency's path may reasonably be discerned, even if the agency explains its decision with [less-than-ideal] clarity").

Plaintiff's second objection to the ALJ's testimony analysis, that her daily living activities were not inconsistent with the stated limitation of needing to alternate sitting and standing, fails for these same reasons. Furthermore, even if the ALJ erred by relying on Plaintiff's activities of daily living as a reason to discount Plaintiff's symptom testimony, such error is harmless because the ALJ provided ample other reasons, supported by substantial evidence, to discount the testimony. *See Petty v. Colvin*, No.

CV-12-02289-PHX-BSB, 2014 WL 1116992, at *7, 9 (D. Ariz. Mar. 17, 2014) (an ALJ's decision will not be reversed for harmless error). Accordingly, Plaintiff has not shown legal error in the ALJ's analysis of the symptom testimony, and the objection is overruled.

## II.    The ALJ did not err in evaluating the medical opinion evidence.

### A. Medical Opinion Evidence

Dr. Robert Barlow examined Plaintiff on October 22, 2022. (AR 1621.) His opinion based on that examination found that Plaintiff could sit for one hour and stand or walk for 20 minutes without interruption. (AR 1632.) Dr. Barlow further found that Plaintiff could sit for 4 hours, stand for 1 hour, and walk for 1 hour total in an 8-hour workday. (*Id.*) Dr. Barlow opined that Plaintiff would have to lay down for the remaining 2 hours of an 8-hour day. (*Id.*) As to Plaintiff's sitting, standing, and walking limitations, Dr. Barlow left blank the portion of the form asking him to "identify the particular medical or clinical findings" supporting his assessment. (AR 31, 1632.) Dr. Barlow provided a written explanation of his findings as to Plaintiff's ability to lift/carry, use her hands and feet, engage in activities such as climbing, balancing, and stooping, and be exposed to environmental conditions. (AR 1631-1635.) In these explanations, Dr. Barlow repeatedly stated that Plaintiff has fibromyalgia with "mild-to-severe generalized pain." (*Id.*) For example, to support his finding that Plaintiff could use her feet "frequently," Dr. Barlow stated, "[p]atient has fibromyalgia, mild-to-severe generalized pain with a positive bilateral straight leg test with radicular signs, [and] peripheral neuropathy in the feet, [and] is somewhat limited in the operation of foot controls." (AR 1633.) Dr. Barlow provided no such explanation for his findings regarding Plaintiff's sitting, standing, and walking limitations. (AR 1632.)

Dr. Barlow's assessment of Plaintiff's condition confirmed her diagnosis of fibromyalgia. (AR 1628.) Dr. Barlow opined that Plaintiff had "mild-to-severe generalized pain," peripheral neuropathy, migraines, and impaired balance. (AR 1628.) He further opined that Plaintiff showed no signs of other physical illness and that her

musculoskeletal examination demonstrated intact range of motion and strength. (*Id.*) The musculoskeletal examination revealed that Plaintiff could lift, carry, and handle light objects, could squat and rise, could rise from a sitting position and get up and down from the exam table, could walk on her toes but not her heels, could hop on the right foot but not the left, and could tandem walk normally. (AR 1625.) Dr. Barlow stated that "pain and impaired balance" prevented Plaintiff from performing some of the maneuvers. (AR 1629.) Regarding Plaintiff's spinal condition, Dr. Barlow found that Plaintiff had spinal pain that was "worsened by movement." (AR 1621.)

### B. Legal Standard

The regulations governing cases filed after March 27, 2017 provide that an ALJ will consider all medical opinions and, at a minimum, articulate how the ALJ evaluated the opinions' supportability and consistency. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The ALJ must "'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source . . . and 'explain how [he] considered the supportability and consistency factors' in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b)). The consistency factor addresses whether the medical opinion is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2). The supportability factor considers whether and to what extent the medical opinion includes relevant objective medical evidence and supporting explanations. 20 C.F.R. § 416.920c(c)(1). The ALJ must address supportability and consistency but need not explain how other factors were considered in reaching a decision. 20 C.F.R. § 416.920c(b)(2).

An ALJ may consider the quality of a medical provider's explanation when weighing the persuasiveness of a medical opinion. *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). Although "an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire," an ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions[.]" *Id.*; *see*

*also Tervizo v. Berrihill*, 871 F.3d 664, 677 n. 4 (9th Cir. 2017) (a "check-the-box" form is not inherently less reliable than any other type of form).

### C. ALJ Findings

The ALJ found Dr. Barlow's opinion "not persuasive" because it was inconsistent with his examination findings and unsupported by the record and opinions of other medical providers.[4] (AR 31.) Specifically, the ALJ found Dr. Barlow's opinion regarding Plaintiff's sitting, standing, and walking limitations unpersuasive because Dr. Barlow left blank the section asking him to identify the medical or clinical findings supporting his assessment. (AR 31, 1632.) The ALJ found this omission "particularly notable" because Dr. Barlow provided explanatory narratives supporting his limitation findings elsewhere in his opinion. (AR 31.) Regarding the consistency of Dr. Barlow's opinion with other evidence, the ALJ noted evidence that Plaintiff had been encouraged to be more, rather than less, active to manage her pain and that Plaintiff never reported to any treatment providers that she had to lay down multiple times per day to relieve pain. (AR 31.)

The ALJ also rejected Dr. Barlow's findings regarding Plaintiff's other limitations. (AR 31-32.) The ALJ rejected Dr. Barlow's opined limitations on Plaintiff's use of her upper extremities and her ability to balance, stoop, kneel, crouch, or crawl, because those limitations were not supported by physical examination results showing that Plaintiff had normal mobility and gait and could occasionally lift and carry up to 20 pounds. (AR 32.) Additionally, the ALJ rejected Dr. Barlow's finding that Plaintiff was limited in the use of her feet because examination results showed that her physical mobility was within a normal range. (*Id.*) The ALJ also rejected Dr. Barlow's finding that Plaintiff was limited to less than a full 8-hour workday based on evidence that (1) Plaintiff's pain management provider had encouraged her to be more, not less, active; (2) Plaintiff was independent in daily activities and enjoyed gardening and being outdoors; and (3) Plaintiff helped her

---

[4] The Court notes that the ALJ reversed the "supportability" and "consistency" terms in this sentence. Supportability refers to the objective evidence and supporting explanations contained within the opinion, while consistency refers to a comparison of the opinion with other medical and nonmedical evidence. Here, this error is harmless. *Petty*, 2014 WL 1116992 at *7, 9 (an ALJ's decision will not be reversed for harmless error).

1    boyfriend with property management duties for 10 hours per day. (*Id.*)

2            **D.   Analysis**

3            Plaintiff objects that the ALJ failed to articulate why Dr. Barlow's opinion

4    regarding Plaintiff's ability to sit, stand, and walk was unsupported by or inconsistent

5    with the evidence. (Doc. 25 at 5; AR 1632.) Having reviewed the relevant evidence, the

6    ALJ's decision, and the R&R, the Court finds that the ALJ's analysis of Dr. Barlow's

7    opinion is supported by substantial evidence and does not contain legal error. The ALJ

8    adequately and rationally considered the consistency and supportability of the opinion

9    and cited specific evidence in the record supporting her analysis. Moreover, the ALJ did

10   not reject Dr. Barlow's opinion regarding Plaintiff's sitting, standing, and walking

11   limitations simply because it was expressed in a "check-the-box" form.[5] Rather, the ALJ

12   rejected that portion of the opinion because it was unsupported by the rest of the opinion

13   and inconsistent with other evidence. This is well within the requirement for analyzing

14   the supportability of a medical opinion. *See* 20 C.F.R. § 416.920c(c)(1). An ALJ is not

15   required to discuss every portion of a medical opinion to find it unpersuasive. *See*

16   *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (ALJ "need not recite every

17   piece of evidence that contributed to the decision, so long as the record permits [the

18   court] to glean the rationale of [the] decision"); *see also Fox v. Berryhill*, 2017 WL

19   3197215, at *5 (C.D. Cal. July 27, 2017) (an ALJ is not required to address every word of

20   a doctor's opinion). Plaintiff has not shown legal error in the ALJ's analysis of Dr.

21   Barlow's opinion, and the objection is overruled.

22   . . . .

23   . . . .

24   . . . .

25   . . . .

26   ───────────────
     [5] Plaintiff argues in her opening brief that the ALJ should have attributed Dr. Barlow's
27   explanations supporting his opinions elsewhere in the form to the blank portion. (Doc. 17
     at 10-11.) The Court finds this argument unpersuasive because Dr. Barlow's other
28   opinions and explanations related to fibromyalgia and not Plaintiff's tailbone pain;
     furthermore, the ALJ's decision not to impute Dr. Barlow's other explanations to his
     findings regarding sitting, standing, and walking limitations was reasonable.

**III.     Conclusion**

The Court has reviewed *de novo* the objected-to portions of Magistrate Judge Macdonald's Report and Recommendation and has reviewed the unobjected portions for clear error. *See* Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition; *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."). The Court finds no error in Magistrate Judge Macdonald's Report and Recommendation.

Accordingly,

**IT IS ORDERED** that Plaintiff's Objections (doc. 25) are **overruled**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (doc. 24) is **accepted and adopted in full**, and the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and close this case.

Dated this 3rd day of September, 2024.

Honorable Angela M. Martinez
United States District Judge

- 14 -